UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF SUNLAND CONSTRUCTION INC. AS OWNER AND OPERATOR OF THE FOLLOWING VESSELS: DREDGE BH101; LAY BARGE K102; MR. DYSON; LITTLE MAN; LIL SMOKE; CHRISTIE B; LORI L,; UNNAMED 2007 40' ALUMINUM HACKCO CREW BOAT; UNNAMED 2003 25' ALUMINUM HACKCO CREW BOAT; UNNAMED 20' AMERICAN FLAT BOAT AND UNNAMED SCULLY'S 20' FLAT BOAT | CIVIL ACTION<br>No: 23-1665<br><br>SECTION T(5) |

## ORDER AND REASONS

Before the Court is Limitation Petitioner Sunland Construction, Inc. and Sunland-Kori Services, LLC's ("Sunland") Motion for Reconsideration pursuant to Fed. R. Civ. P. 54. R. Doc. 64. For the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND[1]

This case concerns alleged damage to oyster leases in Plaquemines Parish. *See*, *e.g.*, R. Docs. 1, 5, 20-21. Claimants are Raymond Bianchini, Jr., and Michael Bianchini ("Claimants"),

---

[1] This motion for reconsideration asks the Court to reconsider its order on a motion to dismiss. Therefore, the Court lists the facts in the light most favorable to Claimants to highlight their allegations. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (viewing all well-pleaded factual allegations in the light most favorable to the non-moving party for a motion to dismiss).

1

the owners and holders of the oyster bed leases. Michael Bianchini originated this matter on April 18, 2023, in a lawsuit filed in the 25th Judicial District Court for the Parish of Plaquemines, Louisiana against Venture Global Gator Express, LLC ("Venture Global") and its contractor, Sunland (collectively, the "Limitation Petitioners"). *See* R. Doc. 1 at ¶ 17. Sunland filed its Petition for Exoneration From or Limitation of Liability on May 17, 2023 and amended its limitation complaint on June 22, 2023. R. Docs. 1, 15. Raymond Bianchini and Michael Bianchini both filed answers to the amended limitation complaint and asserted claims against Sunland. R. Doc. 20, Michael Bianchini Claim; R. Doc. 21, Raymond Bianchini Claim.

After Sunland filed its limitation action, Venture Global removed Michael Bianchini's state court lawsuit to this Court. *See* 23-cv-1796, R. Doc. 1. This removal action was consolidated with Sunland's limitation action. *See* 23-cv-1665, R. Doc. 9. Michael Bianchini moved to remand his state court lawsuit. R. Doc. 11. The Court granted the motion and unconsolidated the state court lawsuit from this limitation action. R. Doc. 48. However, Claimants' limitation claims are separate from the Michael Bianchini state court lawsuit and thus were unaffected by remand. *See* R. Docs. 5, 20, 21.

At issue here are Claimants' limitation action claims, negligence and civil trespass, against Sunland. Claimants' allegations are effectively identical. In 2019, Venture Global obtained a permit to construct the Gator Express Pipeline. R. Docs. 20 at ¶ 3; R. Doc. 21 at ¶ 5. Before construction, Venture Global and Michael Bianchini negotiated and entered a Receipt, Release, and Indemnification Agreement for a limited release of future liability. R. Doc 20. at ¶ 6-7. However, Michael Bianchini alleges Venture Global and Sunland "performed work and/or caused damages to oysters and oyster reefs in areas…[beyond] the scope of the Receipt, Release and

2

Indemnification Agreement." *Id.* at ¶ 10. Raymond Bianchini contends that Venture Global and Sunland performed this work "over and around" his oyster lease without permission. R. Doc. 21 at ¶ 7. Claimants allege Sunland and Venture Global allegedly "caused damages to oysters and oyster reefs in areas" because they "operated", "owned and/or chartered [] and/or controlled vessels and marine equipment" "in the vicinity of [their] oyster leases." R. Doc. 20 at ¶ 10-11; R. Doc. 21 at ¶ 6. They also maintain that Sunland failed to "adhere to their state and federal permits and/or to have used alternative methods which would have caused significantly less damage to the surrounding environment." R. Doc. 20 at ¶ 17; R. Doc. 21 at ¶ 11. Claimants maintain that Sunland and Venture Global used more destructive methods when "alternatives were clearly and reasonably available to them." *Id.* Instead, they contend, Venture Global and Sunland's "ultrahazardous" activities resulted in an increase in oyster mortality rates and damage to Claimant's oyster leases. R. Doc. 20 at ¶ 12; R. Doc. 21 at ¶ 7. Claimants also assert that "the wrongful entry and trespass by Venture Global [and/or] Sunland" caused oyster damage. R. Doc. 20 at ¶ 18; R. Doc. 21 at ¶ 12.

On September 23, 2023, Sunland filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss Claimants' limitation claims. R. Doc. 33. Relying almost entirely on *Shelley v. Hilcorp Energy Co.*—wherein this district dismissed a similar case concerning damage to oyster leases in Plaquemines Parish—Sunland argued Claimants' vague and conclusory allegations did not support their negligence claims. *Id.* at 6-11; 2023 WL 4235563, at *1 (E.D. La. June 28, 2023), *aff'd sub nom*. *Matter of Settoon Towing, L.L.C.*, No. 23-30578, 2024 WL 3520166 (5th Cir. July 24, 2024). Sunland maintained that, at best, Claimants only alleged "that from some time in the spring of 2022 and continuing to the present, a span of some 18 months or more, vessels and marine

3

equipment owned and/or chartered and/or operated and/or controlled by Venture Global and/or Sunland were in the vicinity of Claimants' oyster leases, and that the alleged dredging, pile diving or other unspecified 'ultrahazardous' activities performed by identified and unidentified vessels caused damage to their oyster beds and/or led to increased oyster mortality rates." R. Doc. 33 at pp. 8-9. Sunland argued these claims are too generalized to support a negligence claim. Like in *Shelley*, Sunland also contended that such allegations did not allege the "who, what, when, where, why, or how" to allow the Court to infer it was negligent. *Id.* at p. 10. Additionally, Sunland argued Claimants' negligence claims independently fail on causation because their claims did not allege an independent and particularized negligent act that caused damage to oyster leases. *Id.* Notably, Sunland concedes that it did not individually brief the civil trespass claims. *See* R. Docs. 33, 43, 59; *see also* R. Doc. 64 ("Admittedly, Sunland did not address the civil trespass claim separately").

In opposition, Claimants argued that their allegations satisfied the minimum standards for negligence and civil trespass under Fed. R. Civ. P. 8. R. Doc. 40. They contend that allegations "Sunland breached their duties of care to the Claimants by operating their vessels outside of the permitted zones, caus[ed] damage outside of the permitted zones, and fail[ed] to undertake reasonable and appropriate measures to mitigate damages" were enough for negligence. *Id.* at 8-9. Claimants, unlike Sunland, also individually briefed the civil trespass issue. They maintained that allegations (1) Sunland wrongfully entered and operated its vessels over and/or near their oyster leases without permission and as a result (2) caused oyster damage, was sufficient for civil trespass claims. *Id.* The Court subsequently ordered supplemental briefing to address the Fifth Circuit's opinion in *Matter of Settoon Towing, L.L.C.*, No. 23-30578, 2024 WL 3520166 (5th Cir. July 24, 2024), which had affirmed *Shelley*. R. Docs. 59-61.

4

After supplemental briefing, the Court granted in part and denied in part the motion to dismiss. R. Doc. 62. First, the Court considered Raymond Bianchini as the only remaining claimant and held that he had failed to state a negligence claim. *Id.* at 3-7. It dismissed the claim on the grounds that the claims (1) fail to allege negligent conduct on a specific date by a defendant, (2) assert generalized allegations on the breach element, how the vessels were allegedly operated, and (3) do not plead causation. *Id.* at 5-6. The Court granted leave to amend because amendment would not be futile. *Id.* at 8. However, the Court held Raymond Bianchini had stated a civil trespass claim because allegations that Sunland operated their respective vessels, went over and performed work on Claimants' oyster leases without permission, and caused oyster damage satisfied Rules 8 and 12(b)(6). *Id.* at 7-8.

Now, Sunland asks the Court to reconsider its order on two grounds. First, it argues the Court should dismiss Michael Bianchini's negligence claim for the same reasons as Raymond Bianchini's claim. R. Doc. 64 at 6-7. Second, it maintains the Court should have dismissed the civil trespass claims because, like for negligence, Claimants did not allege the required factual detail—specific dates, specific locations of the alleged trespass, and which vessels crossed into their property. *Id.* at 8-10. Sunland contends that the *Settoon Towing* court made no distinction between negligence and other tortious conduct, so its reasoning should apply equally to Claimants' civil trespass claims. *Id.* at 8-9; 2024 WL 3520166 (5th Cir. July 24, 2024).

In opposition, Claimants do not refute Sunland's contention that Michael Bianchini had operative limitation claims nearly identical to Raymond Bianchini's claims. *See* R. Doc. 69. Instead, they urge the Court to find that *both* claimants affirmatively pled a cause of action for negligence. *Id.* at 3-6. Claimants first argue that allegations that Sunland performed work outside

5

the Receipt, Release and Indemnification agreement satisfy the breach element. *Id.* at 5. Next, they assert that allegations of "dredging, pile driving, and other activities performed around Claimants' oyster leases" purportedly suffice for causation. *Id.* Claimants conclude that the failure to include a specific date also does not warrant dismissal under Rules 8 and 12(b)(6). *Id.* at 4. For the civil trespass claims, Claimants argue that, because they alleged Sunland operated its vessels over Claimants' property without their permission and the "increased oyster mortality…[was] a result of the wrongful entry and trespass," the Court can "reasonably infer" that each vessel purposefully navigated on Claimants' property causing damage to the leases. *Id.* at 8. Therefore, the Claimants maintain they affirmatively state claims for civil trespass. *See id.* at 7-9.

## LAW & ANALYSIS

1. **Legal Standard**

Fed. R. Civ. P. 54(b) governs reconsideration of interlocutory orders. *See, e.g.*, *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. CIV.A. 09-4369, 2010 WL 1424398 *3 (E.D. La. Apr. 5, 2010). The rule allows a district court to "reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981).

"Generally, the courts in this district evaluate a motion to reconsider an interlocutory order under the same standards as those governing a motion to alter or amend a final judgment brought pursuant to Rule 59(e) of the Federal Rules of Civil Procedure." *United States v. Cytogel Pharma, LLC*, No. CV 16-13987, 2017 WL 3849317, *2 (E.D. La. Mar. 28, 2017) (citation omitted). Rule 59 allows a party to "call [] into question the correctness of a judgment" or an order and ask a court to reconsider it. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). A movant "must clearly establish either

a manifest error of law or fact or must present newly discovered evidence and cannot [] raise arguments which could, and should, have been made before the judgment issued." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (internal citations omitted). District courts also have wide discretion in granting or denying motions for reconsideration. *Templet*, 367 F.3d at 479.

Here, the Court is asked to reconsider its order on a Rule 12(b)(6) motion to dismiss. The rule allows a defendant to seek dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility is not akin to probability, but instead, it asks for more than a sheer possibility that a defendant has acted unlawfully." *Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022) (quoting *Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Factual plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (internal citations omitted). While a complaint "does not need detailed factual allegations, [it] must prove the plaintiff's grounds for entitlement to relief—including factual allegations in a complaint that when assumed to be true raise a right to relief above the speculative level." *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021). A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc*., 407 F.3d 690, 696 (5th Cir. 2005).

### 2. **Both Claimants' Negligence Claims Are Subject to Dismissal**

To state a negligence claim under Louisiana law, a plaintiff must allege that: (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant's conduct failed to conform to that standard; (3) the defendant's conduct was the cause-in-fact of the plaintiff's injuries; (4) the defendant's conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Alexis v. Hilcorp Energy Co.*, 493 F.Supp.3d 497, 508 (E.D. La. 2020). Failure to plead a single element with factual plausibility warrants dismissal under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678.

Here, the parties do not dispute that Michael Bianchini had operative claims in the limitation action against Sunland when the Court adjudicated the motion to dismiss. *See* R. Docs. 64, 69, 70. Although Michael Bianchini's claims in the limitation action mirrored his allegations in the state court, the state court lawsuit was procedurally independent of the limitation action claims. *See* R. Docs. 5, 6, 20, 21, 22. When the Court remanded the Michael Bianchini state court lawsuit, it did not disturb the claims contained in Michael Bianchini's limitation action. *See* R. Doc. 48. Sunland's motion sought to dismiss all of Michael Bianchini's claims with equal force as it did for Raymond Bianchini's claim. *See* R. Doc. 33 ("Limitation Petitioners, [ ] move [] to dismiss R. Doc. Nos. 5, 6, 20, 21, and 22, the claims of Claimants, Michael Bianchini and Raymond Bianchini."). Accordingly, Michael Bianchini's claims were pending when the Court addressed Raymond Bianchini's claims. The Court therefore must now consider both claimants' allegations.

Turning to the merits, the Court did not err when it dismissed Raymond Bianchini's negligence claim. Identical to the pleading defects that doomed the *Shelley* complaint, Claimants do not allege with factual support "negligent conduct, on a specific date by a Defendant or Defendants." 2023 WL 4235563, at *6. Rather their unspecified, conclusory, and speculative allegations of negligence fail to "allege either any negligent actions by any specific defendant, or *how* such unspecified actions caused [Claimants'] alleged injuries" and thus warrant dismissal. *Id.* at 5.

There is no daylight between the allegations in *Shelley* and Claimants' negligence allegations. In *Shelley*, the plaintiffs alleged two vessel owners, along with other named defendants, were "responsible for permitting, managing, and overseeing ... oil and gas operation exploration and production projects including the installation, maintenance, and repair of numerous pipelines and platforms within Louisiana territorial waters." 2023 WL 4235563 at *1. During the project work, they alleged, the defendants introduced "brine" and other "toxic substances" "in or in the vicinity of [the plaintiffs] oyster leases." *Id.* The plaintiffs maintained these toxic substances were introduced by Defendant's crude water oil extraction, the same general conduct at issue here. *Id.* The plaintiffs thus argued their negligence claim was sufficient because allegations that the defendants' presence in their waters coupled with the introduction of "toxic substances" that led to "significant oyster mortality" supported a negligence claim. *Id.*

The district court dismissed with prejudice the plaintiffs' negligence claim on the breach and causation element. *Id.* at *5. The plaintiffs' generic allegations failed to satisfy the breach element because unspecific allegations like "releas[ing] toxic substances into the water" did not "point to an action or series of actions taken by any named defendant" that was negligent, let alone

9

one that caused the oyster lease damage. *Id.* For similar reasons, allegations that the release of toxic substances "caused or contributed to extensive oyster mortality" did not satisfy the causation element. *Id.* The Fifth Circuit affirmed the district court. *Matter of Settoon Towing, L.L.C.*, No. 23-30578, 2024 WL 3520166, at *2 (5th Cir. July 24, 2024). Even accepting the plaintiffs' contention that "the only possible cause [of oyster mortality]…was a sudden release of brine" or other toxic substances, the Court of Appeal could only infer a "mere possibility of misconduct" by each defendant, so dismissal was warranted. *Id.*

Qualitatively identical to *Shelley*, Claimants' unspecific and generic allegations fail on the breach and causation elements. First, Claimants' allegations that twenty-seven vessels which may belong to "Venture Global, Sunland Construction and/or Sunland-Kori" and which may have engaged in some form of "ultrahazardous" "extensive works," do not reasonably permit an inference that Sunland itself was a negligent party. "Own[ing], charter[ing], operat[ing], [or] control[ing]" vessels engaged in "extensive work" near Claimants' leases may support the "possibility" that Sunland was negligent. *See* R. Doc. 20 at ¶¶ 11-12, R. Doc. 21 at ¶¶ 6-7. Nevertheless, possibility is not plausibility. Just as allegations that the *Shelley* defendants "release[ed] toxic substances into the water" and failed to mitigate their damages does not suggest specific negligent conduct as to *a* defendant, 2023 WL 4235563 at *5, claims that Sunland and others did not "adhere to their state and federal permits…[could have] used alternative methods," and "fail[ed] to undertake reasonable and appropriate measures to mitigate damages" do not allow the Court to infer reasonably that Sunland is negligent. Specifically, these generalized allegations do not tell the Court *how* Sunland was negligent beyond performing some form of

10

"ultrahazardous" activity. Such generic activities related to crude water extraction are not satisfactorily factual to plead a breach.

Nevertheless, most central to the dismissal of Claimants' negligence claims is lack of causation. Claimants do not allege any subsequent conduct, such as a burst pipe or toxic material leakage, that links Sunland's "extensive works" to the alleged "increased oyster mortality." *See Shelley,* 2023 WL 4235563, at *6; R. Doc. 20 at ¶¶ 12, 17; R. Doc. 21 at ¶¶ 7, 11. Again, such a conclusion may be possible, but this requires unwarranted, speculative leaps the Court cannot make at a motion to dismiss. Neither claimant alleges any result or conduct connecting Sunland's actions to the alleged oyster damage, so both are subject to dismissal on negligence. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005), does not save Claimants because their negligence actions are independently dismissible on the causation and breach elements.

### 3. Claimants However Plead Civil Trespass Claims

Civil trespass applies to immovable property in Louisiana. *MCI Commc'ns Servs., Inc. v. Hagan,* 74 So. 3d 1148, 1155 n.12 (La. 2011) (Guidry, J.). Oyster leases are considered incorporeal immovable property pursuant to Louisiana Civil Code article 470. *Vekic v. Popich*, 236 So. 3d 526, 535 n.11 (La. 2017). An act of civil trespass is defined as "the unlawful invasion of the property or possession of another," and the elements of the tort are: (1) "intent to enter property that belongs to another (defendant need not know the property belongs to another)" and (2) "physical entrance onto the land of another." *Barney v. Plaquemines Par. Gov't ex rel. President*, 22 So. 3d 1117, 1118-19 (La. App. 2009) (citing *Thibodeaux v. Krouse,* 991 So. 2d 1126 (La. App. 2008)). "[A] defendant may be held liable for an *inadvertent* trespass resulting from an *intentional* act." *Terre Aux Boeufs Land Co. v. J.R. Gray Barge Co.*, 803 So. 2d 86, 96 (La. App. 2001)

11

(emphasis in original). A district court may also infer intentional entry for civil trespass when a complaint alleges a vessel crossed onto an oyster lease as part of a known, discrete project. *See Alexis*, 493 F. Supp. 3d at 509.

Claimants' civil trespass claims survive dismissal. Claimants both allege (1) Sunland entered parts of their waters without permission, R. Doc. 20 at ¶11-12, R. Doc. 21 at ¶ 6-7, and (2) "as a result of the wrongful entry and trespass by…[Sunland]…onto Claimant's oyster leases" they suffered "increased oyster mortality" and "accompanying oyster lease damage." R. Docs. 20 at ¶18, R. Doc. 21 at ¶12. Michael Bianchini goes further and suggests with particularity that Venture Global and its contractor Sunland agreed that during the project they would "make incursions only 'within the designed project footprint' as identified in 'maps and charts depicting the locations of the Work.'" R. Doc. 69 at p. 3 (citing R. Doc. 20 at ¶¶ 7, 10). In other words, Sunland could not be in areas outside the project footprint when operating near Claimants' oyster leases. These allegations are sufficient to state a claim for civil trespass. It allows the Court to infer with reasonable probability that Sunland (1) intended its vessels to enter Claimants' waters for the project but, either intentionally or unintentionally, (2) actually entered into parts of the project over Claimants' oyster leases that were outside the agreement's scope or entirely off limits.

*Matter of Settoon* does not foreclose Claimants' trespass claims. It appears that *Settoon* is not limited to negligence as the court held the plaintiffs "[did] not allege their claims of negligent/tortious conduct…from conceivable to plausible." 2024 WL 3520166 at *2 (citations omitted). As stated previously, the plaintiffs there attempted to impute the same generic, tortious conduct, a negligence claim, to over "eighteen entities involved in oil and gas exploration," not just vessel owners. *Id.* at *1. Here, Claimants specifically attribute the alleged offending trespass

12

to two vessel owners, Sunland and Venture Global, not eighteen unrelated defendants. *See generally* R. Docs. 20, 21. Claimants also allege that Sunland and Venture Global trespassed while operating the vessels for a specific pipeline project in the vicinity of their oyster leases. *See* R. Doc. 20 at ¶11, 18; R. Doc. 21 at ¶ 5, 12. As to Michael Bianchini, his allegations even indicate Sunland and Venture Global were aware not to trespass because they agreed to limit their presence to the project footprint. *See* R. Doc. 20 at ¶10.

Sunland opposes on grounds that they do not own, control, or are otherwise responsible for all identified vessels and thus cannot determine which *exact* vessel trespassed. R. Doc. 64 at pp. 9-10. But Sunland can later contest its relationship to the proposed vessels. At this stage, Claimants sufficiently alleged Sunland operated these vessels, the vessels trespassed during a discrete time period, and the trespasses inflicted damage to the oyster leases. The Court can plausibly conclude the trespasses are actionable and traceable to Sunland because "they arose from the intentional act of operating the vessels over [Claimants'] property." *See Alexis*, 493 F. Supp. 3d at 508-509. Civil trespass is not negligence, and Claimants do not need to allege a particularized act independent from the trespass that caused damages. Thus, under Fed. R. Civ. P. 12 (b)(6), both claimants have alleged plausible civil trespass claims against Sunland under Louisiana law. Accordingly,

**IT IS ORDERED** that Sunland's Motion for Reconsideration, R. Doc. 64, is **GRANTED IN PART AND DENIED IN PART.** Sunland's Motion to Reconsider the Court's order on the negligence claims is **GRANTED**. Michael Bianchini and Raymond Bianchini's negligence claims against Sunland are both DISMISSED WITHOUT PREJUDICE and Claimants are granted leave to amend. Sunland's Motion to Reconsider the Court's order on the civil trespass claims is **DENIED.**

**IT IS FURTHER ORDERED** that Claimants are granted leave to file amended claims no later than April 4, 2025. Should Claimants fail to amend by that deadline, or, if necessary, to seek an extension prior to the expiration of that deadline, their negligence claims will be dismissed without further notice.

New Orleans, Louisiana, this 14th day of March 2025.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE
