UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF SUNLAND
CONSTRUCTION INC.

CIVIL ACTION

NO. 23-1665

SECTION "N"

## ORDER AND REASONS

Before the Court is the Renewed and Amended Rule 12(b)(6) Motion to Dismiss filed by Limitation Petitioners and Third-Party Defendants Sunland Construction, Inc. and Sunland-Kori Services, LLC (together "Sunland").[1] The motion seeks to dismiss in their entirety the supplemental and amended claims of Michael Bianchini and Raymond Bianchini (together, "Claimants").[2] Claimants responded in opposition,[3] and Sunland replied in further support of the motion.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order and Reasons denying the motion to dismiss.

## I.    Factual Background

Claimants are the owners and holders of leases of state water bottom used for oyster bedding purposes.[5] The leases, all located in Plaquemines Parish, Louisiana, are alleged to be highly suitable for oyster cultivation, and Claimants allege they have built up substantial reefs on their leases through years of labor. The State of

---

[1] R. Doc. 102.
[2] R. Doc. 85; R. Doc. 86.
[3] R. Doc. 107.
[4] R. Doc. 108.
[5] R. Doc. 85 ¶ 3; R. Doc. 86 ¶ 3.

Louisiana, which owns all water bottoms and oysters located upon them, grants leaseholders the exclusive use of the water bottom, including the ability to cultivate and harvest oysters, and the right to seek damages for injury to oyster resources on their leased acreage caused by non-governmental actors.[6] Oyster cultivation is deeply rooted in the heritage of coastal Louisiana, largely credited to Croatian immigrants who arrived in the early nineteenth century equipped with oyster cultivation experience tracing back to the Roman Empire. Oysters attach themselves to hard surfaces or substrate in the marine environment, where they filter water by capturing plankton and other small particles as they feed. Once attached to a surface, oysters cannot move, rendering them susceptible to changes in the environment, including increased sedimentation and vibration.[7] Claimants allege such harm here due to Sunland's alleged negligence and trespass.

Michael Bianchini initiated this action by filing a lawsuit in state court on April 18, 2023.[8] Sunland filed its Complaint for Exoneration from or Limitation of Liability in this Court pursuant to 46 U.S.C. §§ 30501 *et seq.* and Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure.[9] Claimants each filed an answer and claim in response.[10]

---

[6] *See* La. R.S. 56:422-432.
[7] *See* R. Doc. 85 ¶¶ 6-10; R. Doc. 86 ¶¶ 6-10.
[8] *See* R. Doc. 1 ¶ 17.
[9] R. Doc. 1.
[10] R. Doc. 21; R. Doc. 22.

On April 4, 2025, Claimants separately filed supplemental and amended claims.[11] These filings followed orders issued by a different section of this Court denying dismissal of Claimants' trespass claims, granting dismissal of their negligence claims, and granting them leave to file amended claims.[12] The Court dismissed Claimants' original negligence claims because they were speculative and did not identify "when, where, what, or why, or how" the alleged negligent actions and damages occurred. The Court held that Claimants had sufficiently stated a claim for trespass.

In their operative claims, Claimants allege that beginning in 2022, and continuing into 2023 to completion of a pipeline project adjacent to their oyster leases, Sunland "owned and/or chartered and/or operated and/or controlled" vessels and marine equipment that were "operated on and/or in the vicinity of" Claimants' oyster leases. There, Sunland engaged in work such as dredging, pile driving, trenching, and other activities supporting the pipeline construction. Claimants allege that Sunland's negligence and trespass in connection with this work damaged their oysters and oyster reefs.[13] Claimants bring their claims pursuant to general maritime law, "supplemented with applicable Louisiana state law causes of action."[14]

On April 2, 2026, Sunland filed the amended motion to dismiss presently before the Court.

---

[11] Rec. Doc. 85; Rec. Doc. 86.
[12] R. Doc. 62; R. Doc. 82.
[13] Rec. Doc. 85 ¶¶ 19-23; Rec. Doc. 86 ¶¶ 12-16.
[14] Rec. Doc. 85 ¶ 43; Rec. Doc. 86 ¶ 36.

## II.   Law & Analysis

### A. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes courts to dismiss a cause of action when it fails "to state a claim upon which relief can be granted." For a claim to survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[15] A claim is "plausible on its face" "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged."[16] A court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff,'"[17] and may not weigh the strength of the allegations at this stage.[18] Even so, the court "will not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."[19] A complaint must establish more than a "sheer possibility" the plaintiff's claims are true.[20]

### B. Negligence

"The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law."[21] To prove a negligence claim, a

---

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[16] *Id.*

[17] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[18] *Twombly*, 550 U.S. at 563 n.8.

[19] *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (internal quotation marks omitted).

[20] *Iqbal*, 556 U.S. at 678.

[21] *Withhart v. Otto Candies, LLC*, 431 F.3d 840, 842 (5th Cir. 2005) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)).

plaintiff must demonstrate the defendant owed a duty to the plaintiff, the defendant breached that duty, the plaintiff suffered injury, and the defendant's conduct was a cause of the plaintiff's injury.[22] A defendant owes a duty of ordinary care under the circumstances to a plaintiff, with the scope of that duty largely determined the foreseeability of the harm.[23]

Sunland argues that Claimants' amended negligence claims remain speculative and conclusory and should be dismissed again. Sunland primarily takes aim at the breach of duty and causation elements. Sunland writes off as "generic activity" Claimants' new allegations that Michael Bianchini observed vessels operated by or under the control of Sunland and/or the project owner intentionally discharging uncontrolled sediment, laying pipe, and digging on and/or in the vicinity of Claimants' oyster leases, and argues that Claimants fail to assert any specific actions by Sunland that could constitute a breach of duty to Claimants. While these activities standing alone may not constitute negligent acts, Sunland's argument overlooks Claimants' itemized list of negligent acts allegedly undertaken by Sunland in a breach of its duty of care. This list includes actions such as intentionally depositing sediment on and burying Claimants' oysters; failing to track the locations of its floating equipment to ensure it did not cross onto, trespass, impair, or harm Claimants' oyster leases; employing vessels and equipment not reasonably suited for performing the work so as to increase the impacts on Claimants' oyster leases; failing

---

[22] *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000); *Nagle v. Gusman*, 61 F. Supp. 3d 609, 620 (E.D. La. 2014).
[23] *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010).

to comply with federal and state permit requirements, at least some of which were set forth in a permit attached to the complaint and involved the handling of dredged material and staying within the boundaries of the project; and failing to use alternative methods that would have caused less damage, among other activities.[24] The complaint alleges that these actions breached Sunland's duty to comply with the permit requirements for the project and the requirement that Sunland not cause damage to areas outside of the project's footprint.[25] More broadly, Claimants make non-vessel-specific allegations that Sunland was negligent in its managerial and supervisory role, which was a direct and proximate cause of Claimants' losses.[26] Sunland's actions, Claimants allege, damaged Claimants by killing oysters, increasing oyster mortality, and creating conditions unsuitable for oyster reproduction on their leases.[27]

Sunland relies on *Shelley v. Hilcorp Energy Co.*[28] for its argument that the claims here are too speculative, conclusory, and unspecific to properly state a claim. In *Shelley*, the court dismissed plaintiffs' claims because they failed to provide a "when, where, what, or why, or how" for any action taken by any individual defendant that caused damage to the plaintiffs' oyster beds. The plaintiffs had alleged increased oyster mortality due to the introduction and/or release of substances harmful to oysters by the defendants, approximately eighteen entities involved in oil and gas

---

[24] R. Doc. 85 ¶¶ 39-41 & Ex. B; R. Doc. 86 ¶¶ 32-34 & Ex. B.

[25] R. Doc. 85 ¶¶ 24, 39; R. Doc. 86 ¶¶ 17, 32.

[26] R. Doc. 85 ¶ 36; R. Doc. 86 ¶ 29.

[27] *See, e.g.*, R. Doc. 85 ¶¶ 34, 41; R. Doc. 86 ¶¶ 27, 34.

[28] *Shelley v. Hilcorp Energy Co.*, 2023 WL 4235563, at *5-*6 (E.D. La. June 28, 2023), *aff'd*, *Matter of Settoon Towing, LLC*, 2024 WL 3520166 (5th Cir. July 24, 2024).

exploration and production in the surrounding waters.[29] The plaintiffs did not connect the detection of harmful salinity spikes in the area near their oyster beds with any action by any of the numerous defendants. Nor did the plaintiffs allege that any of the brine or saltwater actually leaked so as to cause the spike in salinity.[30]

Sunland fails to recognize the significant difference between *Shelley*, where the complaint alleged that over a dozen defendants may have caused the harm through unspecified means on unspecified days, and the amended claims at issue. Here, Claimants allege that Sunland vessels were involved in a pipeline project in the vicinity of Claimants' oyster leases and caused harm in specific ways, including on identified dates. Michael Bianchini alleges that he witnessed vessels owned, controlled, and/or operated by Sunland and/or the project owner on specified dates "intentionally discharging uncontrolled sediment" "intentionally laying pipe," and "intentionally digging" on and/or within 2640 feet of oyster leases identified by state lease number, and that these intentional discharges constituted negligent actions that damaged Claimants.[31] Contrary to Sunland's arguments, narrowing the allegations to exclude references to vessels that are not under the control of the Sunland and adding allegations identifying actions by the defendants' vessels on specific dates, as personally witnessed by one of the Claimants, makes the allegations more specific, not less.

---

[29] *See Matter of Settoon Towing, LLC*, 2024 WL 3520166, at *4.
[30] *Shelley*, 2023 WL 4235563, at *5-*7.
[31] *See, e.g.*, R. Doc. 85 ¶¶ 24-35; R. Doc. 86 ¶¶ 17-28.

Sunland argues that Claimants' failure to reference the specific offending vessel involved in each incident dooms the amended claims, but fails to cite any precedent supporting this proposition.[32] Our pleading standards do not require a plaintiff to identify the specific vessel or other instrumentality through which a defendant acted. The allegations as a whole provide "fair notice of what the claim is and the grounds upon which it rests" as required at this stage of the case.[33] In an earlier case, the same section of this Court that issued *Shelley* rejected a defendant's argument that a claimant's "fail[ure] to identify the specific vessels" that caused the property damage required dismissal of the claimant's negligence claim: "The fact that [Claimants] cannot at this stage allege with specificity which barges allided with its docks is immaterial; the complaint contains enough factual matter to raise a reasonable expectation that discovery will reveal the evidence."[34]

As this ruling and Rule 8 reinforce, Sunland is required to plead a claim that is facially plausible.[35] That "standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."[36] Here, the amended claims allege that Claimants' damages were caused by Sunland, and Sunland's vessels are identified in the amended claims.[37] It is not

---

[32] *See* R. Doc. 102-1 at 5.

[33] *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

[34] *In re Complaint of Magnolia Fleet, LLC*, 2022 WL 2986645, at *2 (E.D. La. July 28, 2022); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (Fed. R. Civ. P. 8(a)(2) requires a complaint to contain enough factual matter, taken as true, "to raise a reasonable hope or expectation … that discovery will reveal relevant evidence of each element of a claim.").

[35] *Iqbal*, 556 U.S. at 678.

[36] *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556)).

[37] R. Doc. 85 at 1; R. Doc. 86 at 1.

unreasonable to assume that discovery will uncover evidence of which of the vessels (if any) engaged in the activities that Claimants allege on or around the specified dates.

While Sunland indicates skepticism toward Mr. Bianchini's alleged observations, at this stage, the Court accepts the allegations as true. It is not unrealistic for Mr. Bianchini to know the locations of his and his brother's oyster leases or that vessels he saw performing work on the pipeline did so while being operated by or under the control of the project owner and/or Sunland. The complaint provides sufficient grounds for Sunland to understand the claims against it.

### C. Trespass

Claimants' trespass allegations in their amended claims are materially identical to those that another section of this Court twice found stated a claim.[38] Under the law of the case doctrine, a court will follow its prior decisions in the same case without reexamination in the absence of new evidence or controlling authority and unless the earlier decision is clearly erroneous or would work manifest injustice. While the Court has authority to revise an interlocutory order "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all other parties,"[39] the doctrine enables courts "to maintain consistency and avoid needless reconsideration of matters once decided during the course of a single lawsuit."[40]

---

[38] R. Doc. 62; R. Doc. 82.
[39] Fed. R. Civ. P. 54(b).
[40] *Society of the Roman Catholic Church v. Interstate Fire & Cas. Co.*, 126 F.3d 727, 735 (5th Cir. 1997).

Consistent with the law of the case doctrine, this Court will not disturb the rulings in this case that Claimants have sufficiently pleaded a cause of action for trespass against Sunland. Sunland has not identified any new evidence or controlling authority that warrants a different decision, nor has Sunland shown that the earlier decision is clearly erroneous or would work manifest injustice. Instead, Sunland relies on arguments, addressed to nearly identical allegations, that another section of this Court previously rejected following a thorough analysis of the allegations and applicable law.[41]

## III.    Conclusion

Accordingly,

**IT IS ORDERED** that the Renewed and Amended Rule 12(b)(6) Motion to Dismiss[42] is **DENIED.**

**IT IS FURTHER ORDERED** that the Motion to Issue a Scheduling Order[43] is **GRANTED**. The Court's case manager will issue a notice setting a scheduling conference.

**IT IS FURTHER ORDERED** that the Motion to Set Status Conference[44] is **DENIED WITHOUT PREJUDICE**, pending the parties' participation in a scheduling conference.

---

[41] *See In re Mastercard Int'l, Inc. Internet Gambling Litig.*, 2004 U.S. Dist. LEXIS 2051, *12-*14 (E.D. La. Feb. 11, 2004) (applying law of the case doctrine to deny motion aimed at amended complaint involving claims and legal theories the court had already addressed).

[42] Rec. Doc. 102.

[43] Rec. Doc. 109.

[44] Rec. Doc. 115.

New Orleans, Louisiana, this 10th day of June, 2026.

_____
ANNA ST. JOHN
UNITED STATES DISTRICT JUDGE